# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL L. GILLUM,

                Plaintiff,

v.

ARMOR HEALTH CARE, ALYSSA
SEKADIO, HOUSE OF
CORRECTION, C.O. NASH, LT.
MILLICCA, and CAPTAIN
SULLIVAN,

                Defendants.

Case No. 18-CV-236-JPS

**ORDER**

On April 11, 2018, the Court screened Plaintiff's Complaint as required by 28 U.S.C. §§ 1915 and 1915A. (Docket #8). The Court concluded that Plaintiff failed to state a viable claim for relief against any of the Defendants. *Id.* It granted Plaintiff leave to offer an amended pleading no later than May 2, 2018. *Id.* Plaintiff's amended complaint was received on April 30, 2018. (Docket #9). The amended complaint must also be screened, and all of the same standards announced in the Court's April 11 order apply here. (Docket #8 at 1–3).

The material allegations of the amended complaint are similar to those of the original complaint. *Compare* (Docket #1) *with* (Docket #9). Plaintiff was incarcerated at the Milwaukee House of Correction ("HOC") in January 2018. (Docket #9 at 1). He says the temperature inside his cell was 55 degrees, though it is not explained how he knew this. *Id.* Plaintiff wore only a t-shirt and linen slacks. *Id.* In the early morning hours of January 5, after sitting in the cold for three-and-a-half hours, Plaintiff

experienced vomiting and diarrhea. *Id.* He was sent to the health center and evaluated by Defendant Alyssa Sekadio ("Sekadio"), who is identified as his healthcare provider. *Id.* Sekadio diagnosed Plaintiff with pneumonia and ordered that he be quarantined. *Id.* Plaintiff was not sent to a hospital, but was instead put on medical observation in the segregation unit. *Id.*

Plaintiff's segregation cell was "full of bio-matter," including human waste from a prior occupant, and it also was at a "below freezing" temperature. *Id.* at 1–2. At some point, Plaintiff soiled himself and his clothes. *Id.* at 2. He asked Defendant C.O. Nash ("Nash"), the guard on duty, if he could take a shower to wash himself and his clothing. *Id.* She repeatedly refused this request. *Id.* He was also denied contact with "physic" services, which the Court interprets as the psychological staff of HOC. *Id.* Only when the next guard came on duty were Plaintiff's requests fulfilled. *Id.*

Plaintiff's amended complaint then shifts its focus to his subsequently filed grievances. His first was about being sent to segregation rather than to a hospital. Plaintiff says that HOC administration commonly sends inmates to segregation for medical observation, rather than an infirmary or hospital. *Id.* He nevertheless asserts that although Sekadio would be "overridden by prison staff" as to Plaintiff's placement in segregation, she "could have expressed her concerns." *Id.* Plaintiff asked her directly why he was being sent to segregation, and she said it was because HOC was not equipped with an infirmary. *Id.* He contends that the lack of an infirmary meant that he received no healthcare at all. *Id.*

Plaintiff's second grievance was directed at Nash's conduct. *Id.* at 3. He says that the grievance process was ineffective because Nash was called on to respond to the grievance in the first instance. *Id.* Plaintiff further

complains that Defendants Lt. Millicca ("Millicca") and Captain Sullivan ("Sullivan") hindered the grievance process. *Id.* Plaintiff claims that their conduct violated his "due process rights." *Id.* Finally, Plaintiff either filed a grievance against Defendant Armor Health Care ("Armor"), or Armor's employees responded to some grievances; Plaintiff does not clearly describe Armor's involvement. *Id.* He nevertheless asserts that "Armor health care nursing supervisors" offered misstatements in responding to his grievances. *Id.*

Plaintiff concludes by stating that "all defendants play a part in intentional acts of wrong doing, deception, or not taking responsibility of there [sic] actions in the cruel and unusually [sic] punishment that placed my health and life in jeopardy[.]" *Id.* He requests $1,000,000, that Millicca and Sullivan be fired, and that HOC change its policy on placing inmates on medical observation in the segregation unit. *Id.* at 3–4.

Plaintiff has again failed to state any viable claims for relief for the same reasons the Court explained in its prior screening order. Thus, this latter screening order will be rather duplicative of the former. Some of the Defendants may be dismissed summarily. HOC is not a suable entity. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Armor is not liable simply because it, through its employees, generally provides medical services at the HOC, and neither has Plaintiff alleged a policy claim against Armor. *Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Millicca and Sullivan were not directly involved in the January 5 incident. Thus, they cannot bear Eighth Amendment liability stemming from that incident. *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). Nor could they be liable for their grievance handling; though Plaintiff may not have liked how they

resolved his grievances, they did not simply send his complaints to the shredder. *Id.* at 595.

Plaintiff comes closer to stating claims against Sekadio and Nash, but still falls short. The Eighth Amendment proscribes the use of cruel and unusual punishment. Plaintiff's allegations invoke two recognized variations of that rule. One is that prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that they "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. The term "[d]eliberate indifference"

> is a subjective standard. To demonstrate deliberate indifference, a plaintiff must show that the defendant acted with a sufficiently culpable state of mind, something akin to recklessness. A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Deliberate indifference is more than negligence and approaches intentional wrongdoing. In other words, [d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

The second variation arises when "prison officials deliberately ignore[] conditions of confinement that failed to meet contemporary requirements of minimal decency." *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008). The Seventh Circuit explains that "[m]inimal decency requires the prison to provide reasonably adequate sanitation and protection from the cold." *Id.* Ultimately, the standards are very similar—they require an objectively serious deprivation and a sufficiently culpable

mental state on the part of the prison official. *See Haywood v. Hathaway*, 842 F.3d 1026, 1030–31 (7th Cir. 2016).

Plaintiff's claim against Sekadio appears to be for medical deliberate indifference. Assuming, without deciding, that Plaintiff suffered a serious medical condition, Sekadio was far from indifferent to Plaintiff's needs. She evaluated him and ordered treatment. Whether or not HOC has an infirmary, Plaintiff did indeed receive medical attention. Further, prison officials, not Sekadio, were in charge of Plaintiff's cell assignment. Plaintiff gives no indication that she could overrule the guards. Though Plaintiff now says that Sekadio should have "expressed her concerns" about his cell assignment, he does not explain how that would have changed anything. Sekadio cannot be liable for deliberate indifference for failing to engage in a futile protest.

Plaintiff seems to assert both Eighth Amendment variations against Nash. A careful review of Plaintiff's allegations reveals that neither is present here. Plaintiff complained to Nash about only two things: 1) the need to wash himself, and 2) a desire to be seen by the "physic" service. Plaintiff never complained to Nash about the illness which landed him in medical segregation, whether it was pneumonia or something else. Further, there is no indication that Plaintiff had a diagnosable or obvious psychological problem which mandated involvement by a mental health professional. Finally, Nash was entitled to rely on the medical care provided by HOC's medical staff. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Thus, Nash was not deliberately indifferent to Plaintiff's presumed medical needs.

The same is true for the conditions of confinement claim. Plaintiff did not tell Nash that his cell was too cold or that it was contaminated with

waste. Further, Plaintiff does not explain how Nash was responsible for that cell assignment or that she would have been authorized to move him. Finally, as to the cold, Plaintiff is not entitled to relief from the "usual discomforts of winter," even if those seem harsh. *See Mays v. Springborn*, 575 F.3d 643, 648–49 (7th Cir. 2009).

Though Plaintiff did complain about being soiled himself, he was allowed to shower within twelve hours. He seems to have endured the cold for about that same amount of time. While neither condition was pleasant, the Eighth Amendment sets an extremely high bar for claims that a prison's living standards fall below the level of minimal decency. Factual scenarios which present viable claims generally last for at least days, if not weeks, of exposure to such conditions. *See Wheeler*, 303 F. App'x at 368 (collecting cases). Plaintiff's relatively brief suffering, while not cause for commendation to Nash or the prison generally, is not sufficiently serious to invoke constitutional protections.

Plaintiff has already been afforded an opportunity to amend his pleading. This did not result in materially different allegations, so there is no reason to give him a second chance at amendment. This action will be dismissed for his failure to state a claim for relief.

Accordingly,

**IT IS ORDERED** that this action be and the same is hereby **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim;

**IT IS FURTHER ORDERED** that the Clerk of the Court document that Plaintiff has incurred a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that a copy of this order be sent to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857; and

**THE COURT FURTHER CERTIFIES** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless Plaintiff offers bonafide arguments supporting his appeal.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of May, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge